Case number 24-5393, United States of America et al versus LHC Group Inc. Oral argument not to exceed 15 minutes per side. Jillian Estes, for the appellant, you may proceed. Thank you. May it please the court. My name is Jillian Estes. I'm here on behalf of Relators and Appellants Leigh Ann Marshall, John Esterbrook, and VIB Partners. I would like to reserve three minutes for rebuttal, please. The procedural history that brought us here in this case is undoubtedly complex. It's been set out in detail in the lower court's opinion and was also in Relators' opening brief, so I won't get too much into detail here today. But in the event a visual aid is helpful for you as it is for me, I would point the court respectfully to the lower court's Relators' opposition to the motion to dismiss there at 50-1 has a timeline, which may be helpful for the dates involved here. For purposes of today's discussion, what matters, though, is two dates, August 23rd of 2021 and August 30th of 2021. The first date is the date that the district court in Marshall 1 dismissed all of the claims that Relators brought on behalf of the United States subject to the first-to-file bar based on an earlier case called Bowling. And on August 30th, 2021, when this case called Marshall 2 was filed. Despite those two dates and the seven days difference between them, the district court in this case held that the Marshall 1 continuation of Ms. Marshall's retaliation claims, a personal claim based solely on September 9th, when you filed an appeal of the dismissal of the QTAM claims in Marshall 1. How does that play in? So it doesn't play in for the factor that's before the court today for two reasons. One, this case looks strictly at what was pending on the date of the case being filed. And in this case, the Supreme Court's directives in the Carter case, it ceased to be pending on the date it was dismissed, which was August 23rd. Secondly, that appeal never fully formed. It became a legal nullity when it did not get accepted by the appellate court and was not pursued any further by the Relators. It was dismissed, I believe, October 21st of 2021. What happens? What happens? Suppose it didn't get dismissed. Supposedly reversed and reinstated the False Claims Act claims. And so there would be those claims. Would those claims now be filed second? Because they were reinstated after you filed your second Marshall 2? If Marshall 1 had it. Marshall 1 goes up on appeal. Gets resurrected. Gets reversed. So I just think it's a very unusual. Your view of pending creates a very unusual circumstance because I think of pending the case is done, final judgment appeals process is run. That's how we think about it in the habeas context. Under your view, claims could get reinstated and then we'd have tricky questions about which one is the first filed claim, the one that was reinstated or the one that was filed the second filed suit. Certainly that it is a procedural anomaly that exists in the False Claims Act and it's not. It's not a procedural anomaly if we interpret pending. I don't. I wouldn't even call it. It's a. Ordinary meaning I'd almost call it legal meaning that it's a term of art in the legal context. That means the case is done, including the appeals process. So the Supreme Court had the opportunity to come to that exact same conclusion and it chose not to for purposes of the False Claims Act. It said for the False Claims Act and it didn't accept or adopt pending to mean that in every circumstance. And there's been other cases where it adopted it differently. But when it evaluated pending, it came to the conclusion that pending ceases at dismissal for purposes of assessing the first to file bar. And so that's what happens in this particular case here. Pending stops. I don't think that the terminology was at the dismissal of the later claim, which I get, you know, we might be slicing the onion pretty thin there. But I found the language to be really kind of not ambiguous, but it certainly wasn't specific as to say that, well, if there is this lawsuit, there is a PTM claim and then maybe there's something else with it. Yes, but the case is continuing on. There's still the opportunity maybe for the district court to even revisit the dismissal of the PTM part of it. Certainly the appellate period has admonished that that dismissal is what they specifically meant. I don't know that it is that clear. Where do you see that clarity? So I see the clarity a couple of ways. There were arguments raised by my friend on the other side that get to this issue that it should be dismissal at the very end of the ultimate resolution of the case. What happens here and why I don't think the Supreme Court interpreted that way is because that creates this window in which there can be no claims brought on behalf of the United States through the entire time that a personal cause of action on retaliation is pending. And that's exactly, in fact, what happened here is that from the time that Marshall one dismissed all of the claims on behalf of the United States, if the continuation of just those personal retaliation claims could bar any future substantive fraud claims until the end of that, it actually incentivizes the defendant, one, to retaliate against its employees in hopes that such a situation exists, and two, to prolong that case as long as possible. So in that exact instance, if that was the proper interpretation that the continuation of that personal cause of action meant that finality wouldn't be occurred for the cause of action on behalf of the United States until the end, even if the day that that decision came down and the defendant said, you know, we probably should resolve this with Ms. Marshall on her retaliation claim, she has a good argument here, they're incentivized to draw that out for years as in fact happened here. So I agree that that is a practical problem. And why wouldn't we say that the solution is to interpret pending in an abnormal way, the solution is to adopt kind of the backup argument, which is the second case doesn't necessarily have to be dismissed as the remedy, it could be stayed or that type of like give district courts discretion to handle this via the second case rather than adopt kind of what I would say is a strange interpretation of pending. So that is one option. And we sort of discussed that here when we get to the idea of whether amendment would cure one of these issues. And that's an exact reason why amendment should cure if there is a first to file issue. If the court accepts that a continuation of a personal retaliation claim would bar any substantive False Claims Act allegations brought on behalf of the United States in that window, then we would want the ability for the lower court to be able to cure by amendment so that there was not a period of immunity given there. And essentially saying that in this particular case, okay, if Marshall 2 was stayed, instead of being dismissed there, and they said, well, we'll wait until that retaliation claim runs. And then when it does, your case has the substantive allegations on there. It wouldn't allow any, if that case was sustained and then could be amended to cure any defect at that point, it wouldn't allow any claims to have run under statute of limitations. So there would be no period that the United States claims, which is really what this is all about, didn't have an available remedy. Is there a mechanism for really finally ending the United States claims, the QTAM claims, and letting the retaliation claims go forward such that we could say that they're not pending? Like here they were dismissed, right? But then you still have Rule 54, you have, I mean, you appealed, right? It seems like there was still ongoing stuff. Could you voluntarily abandon your appellate rights or things like that? Is there any other mechanism to make clear, okay, the claims of the United States here, the QTAM claims are no longer going forward? I think that's why adherence to the black letter language of the Carter case does exactly that. So if we view that from the date that the cause of act... It's a little hard because we don't know if you're going to appeal or not. And as Judge Murphy's hypothetical was like, well, maybe you'll win, or maybe you'll get like a Rule 54 certification of that question. And then it can go up even in a piecemeal way, right? And you don't know if essentially you still have like live QTAM cases going on in that, and here Marshall won, right? And certainly there was indication in this case that there was attempt to keep them alive. So Walburn tells us the circuit decision in Walburn and specifically in Note 5 tells us that the ultimate outcome of that first filed case is not what determines whether the second filed case was appropriate first to file or not. So it does create that space. And I would say that either interpretation before the court of how the first to file bar works creates a bit of this procedural anomaly where there is a space there. And so we look to what makes the most sense for advocating the government's interest, which is how the False Claims Act is constantly interpreted. What balances the court's interest and the government's interest in curing any fraud brought against it and making sure there's no opportunistic cases. And that's really where both the public disclosure and the first to file bar and all of that come from. So on balance here, there's potential that it gets confusing in these cases where there could be something on appeal. And any relators counsel who does these cases recognizes the reality that at any point we can face a first to file motion. We could be well into litigation and something gets unsealed that was filed before us and that that litigation may grind to a halt and we have to determine who is first. It's a reality of this. What Carter tells us also is that the False Claims Act is not a finely tuned machine. It's a really complex piece of litigation where pieces don't run together very smoothly all the time. And this, I think, is one of those. But no interpretation in any court that's before this circuit or any other circuit we've seen ever advances an interpretation which allows for a period of immunity where the government has no way to bring its claims through a relator. The government can, but that's the again, the False Claims Act has never been interpreted to say only if the government can do that. We're bringing claims to advance the government's interest. I did like your leave to amend. I just think giving district courts discretion on this issue about what makes the most sense fits the circumstances. But we have, it's black letter law in our circuit that in order to file a proper request for an amendment, you have to file a motion and that a sentence at the end of your opposition is not enough. So I'm hard-pressed to think that a court abused its discretion given that case law. So what would be your response to that? So the court didn't respond to our request for it one way or the other. It didn't acknowledge it. It didn't grant it or deny it. So we don't have a good understanding of its reason why amendment wasn't permitted. It just didn't acknowledge it one way or the other. And while this circuit does have the law that you're talking about, it also does talk about allowing amendment to ensure that a case is reached on its merits and not on a procedural technicality. And in something like this, in this particular instance with the False Claims Act, I think it stands differently than anything else where amendment is appropriate to make sure that it's not resolved on anomaly. And there are certainly cases that say that you have to ask for it one way, but there's also cases that do specifically get to the fact that it can be asked for in any number of ways. And we did ask those three times throughout the motion for an opportunity to amend if there was a technicality or procedural deficiency that needed to be addressed. And so having it in there, I think, does meet the standards of what is required in this circuit in that. And it can be done through a separate motion. It just can't be not asked for at all and then say the court didn't agree to it. Motions are one way, but it's not been adhered to completely strictly. Okay, thank you. Thank you. We'll hear from the other side. Good morning, Your Honors. Jason Popp on behalf of LHC Group. May it please the court, I'd like to start maybe in reverse direction. Judge Murphy, you were asking questions about the issue around an appeal, and I do not think the district court has that discretion. So let me talk about why that is. For starters, the Rigsby opinion from 2016, the Supreme Court explained that the first to file bar, quote, requires and express terms the dismissal of a relator's action. It doesn't authorize a stay, nor does it allow a relator to cure a defect through amendment. So I've come across this issue a couple times now in cases. And the issue is there is a, what I will call, a prohibition or a requirement listed in a statute. And, but Congress did not, did not also say what the remedy should be for violations of the requirement. So I get, I get Rigsby. I don't, I don't view the first to file rule as necessarily including any particular thing. So, sorry, I didn't mean to interrupt you. I was going to read it, but you know it as well as I do. It just says you can't, you can't bring a related action. And then the question is, once you bring the related action, the question is, okay, you violate it. So what should the court do about it? It's an implied gloss to say that the proper thing to do is dismiss, even though it could almost be sure about by itself, just by the first. Sure. So in addition to, to Rigsby, you've got Hallstrom, which talks about the same idea that when you violate the terms of a statute, dismissal of the action is the appropriate outcome. Rigsby didn't even say that itself, right? So Rigsby was a case where you violated the seal. That statute says, I don't even know what it says now. It's something that there's a shall in there. You shall keep it under seal. Correct. You violated that, shall keep it under seal. The remedy is, and the court was like, no, the remedy is the courts have discretion to determine the appropriate remedy. And it contrasted that with the first to file bar, where it explained, quote, a violation of the first to file bar requires in expressed terms, the dismissal of a related action. So that's what the Supreme Court said. I got it. I got it. It was dicta though. Well, I think it's quite persuasive dicta and I would. Okay. Give me a reason logically instead of presidentially wide. Because to allow the cure would be to ignore the violation in the first part. And you have to apply the statute itself, which speaks to the bringing of an action. And as the Shea court explained in the second circuit, an amendment of a complaint has no impact on when the action itself was brought. Think about exhaustion. Federal habeas petitioners have to exhaust in state court. And I think it says shall in there. You can't bring a claim unless you exhaust. The Supreme Court has said you can stay that case to allow them to go to state court to exhaust. So there, the court has not interpreted pretty similar language to mandate dismissal. Do you see my point? Do you know that you might not know the area of law? I know it because I know that the hit that the use of pending is the same in habeas as it is but not exactly what you're talking about. I think. And I know you're asking me, but the precedent I would point to is Judge Easterbrook, who examined that, who explained that if you were to allow a stay, you would do nothing to block an infinite series of duplicitous actions. And as long as you are next in queue, you could seek a stay. And what Hallstrom says is that you can't leave a case on ice when the action itself violated the terms of the statute. And so if we if we said that district courts had discretion, presumptively, if it's in the middle of the case, it's ongoing, you should dismiss. But if it's one of these weird circumstances where perhaps it's near its end or perhaps by the time it's reached us, it's already over, what's the point of making them refile? Because the case is already over, so it's been cured. And now that we know from Carter that you're allowed to file a second suit, it's not an absolute ban. So a couple of things. One, it would be inconsistent with the statutory language. It doesn't, the statute doesn't say that. In order to do that, Judge Murphy, you would have to read the statute as saying that something like, while another action under this section is pending, no person other than the government may continue to prosecute a related action. All the courts have looked at that and said that's not what the statute says. The other issue, Judge Murphy, is I would point to the Fourth Circuit's discussion in Carter where they confronted the same issue, this exact same issue, and said had Congress wanted to implement a revival mechanism to avoid issues around statutes of limitation and repose, it could have done so. It chose not to, and so the court is not at liberty to do that, nor does the district court have the discretion to do that. The only case that has allowed this option to go forward was the First Circuit case in Far America. Notably absent from that opinion was any discussion of the first to file bar. The court made no attempt to explain how the language of the first to file bar would allow cure through amendment of a defective complaint. Instead, what the court said was, well, requiring a relator to file a new action would be a quote, pointless formality. But courts are not permitted to disregard a statute on the belief that applying it would be pointless. And every court that is considered, the Second Circuit, Fourth Circuit, D.C. Circuit, Ninth Circuit, Seventh Circuit, they have all confronted this exact issue and explained in plain terms why the statute doesn't permit that cure. They also went. My idea that it talks about a description or a requirement or a prohibition, but it doesn't actually have the language in there about what you're supposed to do. My recollection, Judge Murphy, is they all just pointed to Rigsby and read that to be whether it or not read that to be the remedy. The other thing I would note is those courts were very clear about why the language compels that conclusion. But they also examined the policy rationale supporting that they did so begrudgingly and with haste because they said we don't need to look at policy. The statute is so clear. But I would point the court to the Wood versus Allergen decision and the Shea decision where they outlined a litany of issues that would ensue if you were able to let your case stay on ice while an earlier one remained pending. Again, it would do nothing. Go ahead, Judge Blumkatz. Can I just bring you back to this case for a second? Please. I'm curious what the relators are supposed to do here, right? So they file their first case when bowling is still under seal, right? Like they don't know that it's going on. Okay, so Marshall One, they have lost first to file because bowling is pending. But bowling is defective in some way. Now Marshall One is also defective in some way because it was filed when this other thing was under seal that they didn't even know about, right? So in order for them now to try and file another case that's not first to file, what do they need to do? They need to get rid of their retaliation claim, voluntarily dismiss it. Is that what your argument is? They could have dismissed it without prejudice. They could have dismissed it without prejudice. If they haven't violated the statute, they can maybe bring it again with the next case. So they voluntarily dismiss it. Do they now need to wait for some sort of appellate period to expire as well? Correct. And I'll tell you- How long is that? I think it's 60 days. Yeah. And if the other side files an appeal, I mean, you would think they'd won, but maybe they don't want to claim voluntarily dismissed. So that can just keep playing out. Correct. And there's another mechanism, Judge Bloom-Katz, which is they made the decision to join their retaliation claim with their False Claims Act claim. Had Marshall brought those in two separate actions, which she has permitted to under Federal Rule 18, this issue wouldn't have arisen. And frankly, it would be much smarter to do that because these False Claims Act cases often sit under seal for years. The retaliation claim would have been addressed before this thing even got unsealed. So that is a very obvious way to avoid this outcome. But the other thing, Judge Bloom-Katz, of course, has said is, yes, these procedural requirements can create issues for relators. But the concern about the False Claims Act, the primary concern is making sure that the government is made aware of the fraud. So if there happened to be, quote, unquote, procedural oddities as the Fourth Circuit and Carter said in 2017, Congress thought about that and they didn't view those oddities or potential quagmires to be a result to change the way the statute is written. Should you- Please. So- Yes, thank you. I'm going to speak to this. What is your next best argument? And even if you don't think it's a nice argument, it would be the 9B argument would be the next best one. And I don't please remind- I do want to talk about the effect of a 9B defect in earlier file complaint, the Poteet case. So I know I've only got five minutes, but I want to get there too. But under 9B, Judge Davis, this court in the FASI case examined an almost identical complaint where the relators did not identify a claim. And Judge Murphy, you talked about an earlier case today. The Sixth Circuit requires as an indispensable element, the identification of a false claim. There has been one exception to that requirement and that's in the Prather case where the relator there worked in the billing department and she was able to identify specificity about various claims and couple that knowledge with her billing insight. And so the Sixth Circuit let that relator get through. The Sixth Circuit, and we've identified a bunch of cases, has said over and over, that's the only time we've allowed that exception. And so Judge Davis, the problem for the relators here is you've got a relator in Marshall who had no- who didn't- wasn't involved in this coding exercise and could not identify a false claim. She didn't identify a claim for payment that had ever been submitted, much less when it was submitted, by whom, or the amount. The anonymous VIP partners fell in the same category. They said that they held these managerial positions, but just because you're in a management position doesn't mean you can satisfy 9B. So Judge Davis, that would be our best secondary argument, is that 9B would require dismissal. There's pages of examples, patients A-A through Z-Z. You don't think those qualify as identifying a specific claim? No, those ident- sorry, Judge Murphy. Those identify patients where codes were allegedly changed, but there's no link between the change in that code to the- to the submission of a claim. And Judge Murphy, as the complaint concedes, the changing of a code quite often has no impact on the payment itself. So it's- it's- it's problematic in two ways, but the first of which is that there's no effort to link the changing of the code to the submission of the claim. Same issue in FASI. FASI actually had a bit more detail because it said, here was the clinician who changed that claim- sorry, changed that code, and here was the date. But what the Sixth Circuit said as well, you still haven't tied that to the- What do you- what do you- what does identify a claim mean? Ident- the- the identification of at least one claim for payment that was submitted to the government. Like the paperwork or- On- on- dates? On July 13th, 2024, LHC groups submitted a claim for a patient- I won't use your name- for a patient, you know, Alpha Beta, and that claim- that claim requested payment in the amount of $2,600. It was false because. So yes, it is that identification. So Ibanez, after Prather, several- several Sixth Circuit opinions have answered that question, no, that you cannot make that inference. One other issue on 9B, and this I want to spend- I know I've only got two and a half minutes yet, and I know you didn't ask any questions about Poteet or Wahlberg. My friend mentioned Wahlberg, but for a different purpose. But it's important to talk about those two cases because they were not presented to the district court in their opening brief. They- they spent like a page on it. We didn't spend a bunch of time on it. And then the reply brief talks a lot about Poteet, and here is what the argument is. What the relators say is that because their first complaint is, quote, legally infirm, it should not act as a bar to their second complaint. The first to file bar doesn't include that exception. It is exception free. So the relators point to the Poteet decision. That decision upheld dismissal of a complaint under a different bar, the public disclosure bar. And after reaching that decision, the court explained, we don't have any need to examine whether the first to file bar would apply also, but we want to provide some guidance on it to our district court. So by that prefatory statement, what it went on to say was dicta. Judge McKee confirmed that in his concurrence, where he said the discussion of the first to file bar was, quote, entirely unnecessary, and then went on to explain why he disagreed with it. So let's talk about the substance for a moment. In that majority discussion, the majority opined that if a first filed complaint is either jurisdictionally barred under the public disclosure bar, which Judge Collier did not hold in this case, or if it fails to meet Rule 9b, also which Judge Collier did not address, then it doesn't preempt a second filed complaint. In support of that latter proposition, the Poteet court looked to the Wahlborn case. And I want to make it clear Wahlborn doesn't make an exception to the first to file bar, and much less does it make an exception that would require a first filed complaint to itself satisfy the first to file bar. I know it's a tongue twister, but it's really important for the panel to understand. And Wahlborn, please. Are you essentially saying because Poteet didn't explain in its description of complaints that would be like legally infirm and mentioned like jurisdiction, but it didn't mention first to file, that therefore this doesn't count as something within the orbit? Correct. And Wahlborn, what Wahlborn said, is it... It's a little nitpicky about reading Poteet that closely. I mean, it's kind of saying, I mean, I take your point about it being a dicta or a necessary or things like that, but it leaves some pretty wide language, right? The complaint must not itself be jurisdictional or otherwise barred. I mean, it does more than a jurisdictional bar. So I want to talk about Wahlborn because I don't want the application there to be mistaken for a broader rule. So in Wahlborn, which is what Poteet cited too, it looked at two complaints. The first one contained what it identified as a haste, I'm quoting, a quote, haystack of unspecified fraud. The second one contained a particularized theory with supporting details. And what the Sixth Circuit said is you can't look at those two complaints and come to the conclusion that they arise from the same underlying facts, which is the test under the first to file bar. Now, what it did not say, nor has any court in ever held that the first to file bar does not apply if the first filed complaint is itself defective under the first to file bar. The KBR opinion, of course, dealt with that same issue. In KBR, you had Carter who, and by the way, on the KBR issue, the KBR court acknowledged that when someone files a cert petition, that leaves the case pending. So the same would be when you file a notice of appeal. But in KBR, you had Carter who kept filing complaint after complaint, dismissing them, appealing them, and at each turn they got dismissed under the first to file bar. In the Supreme Court case, the Supreme Court was examining a Fourth Circuit opinion where the Fourth Circuit held that the complaint it was reviewing was barred by two previous pending complaints. Of course, that second one was naturally defective under the first to file bar because it was filed after the first pending complaint. Neither the Fourth Circuit nor the Supreme Court made any finding that that argument would apply. And it would result in really absurd results where if you did apply that, like if you had, and you have to, you're going to have to diagram this out to see it, but if you've got complaint A, B, and C, and A gets dismissed between B and C, and if you're applying this, you know, non-statutory rule that you have to see whether the pending complaint is itself barred, C is looking to see whether B and A are related. And it says, well, because B was, because B itself was defective. Yeah, you get it. Thank you. Appreciate it, Your Honor. Thank you, Your Honors. A couple of things I'd like to address. One is my friend here referred repeatedly to looking at the language of the statute, and then specifically talks about word action. But the first to file bar doesn't just say action. It says action brought under this subsection. And that's been read out of virtually every argument made by LHC because it doesn't meet their needs if it's only read to say action. And to Judge Blomkatt's question is basically then, so what could they have done? And my friend here says that we could separate out the retaliation claim and bring that separately. What we see in Poteet and the reason that that's not the right answer, and it can't be the answer, is that retaliation cases can bar a subsequent case based on public disclosure. So while it wouldn't work as a first to file bar, it would still have the same immunizing effect for defendants, and it would unnecessarily multiply litigation in all the district courts if claims brought relative to the same underlying theory of fraud and the experience of the relator were separated out, brought on two separate tracks, just to ensure that the first to file bar wouldn't preclude any later claims brought on behalf of the United States. So I agree, and that really gets to the underlying question of all of these about the opportunistic relator and duplicative parasitic relators. None of that exists here, which really kind of flies in the face of the purpose of all of these as applied to the facts of this case, because these are true whistleblowers. These are people who have been attempting to hold LHC accountable for tens of millions of dollars of fraud based on their own personal insider knowledge and experiences from the very beginning, from the first case that they filed. So this has never been about what the first to file bar was intended to be used for. It's sort of become both a sword and a shield for the way that LHC has been able to avoid addressing this case on the merits. Thank you very much. I appreciate that. The 9B issue, is that what you're asking about? Survive FASI. So FASI doesn't say that this is not a case that can proceed forward. In fact, the opposite. FASI says two things that are really important here. One, it recognizes that this fraud scheme of increasing OASIS scores is a valid theory of fraud. It also specifically says that circumstances of any case shouldn't be mistaken for the rule. And that's exactly what is attempting to happen here. This case has different allegations in FASI. It has an incredible amount of detail. And Judge Murphy, as you recognized, we have countless patient examples where we do provide the exact detail that LHC says we don't provide. We identify the value of claims and the value once they've been changed. And Relator Estherbrook was in a position where he had knowledge of the billing codes that were submitted and reports referencing these false claims that were submitted to the government and the impact on reimbursement. So all of those details do exist in here and they exist in a way that satisfies both the specific claim that's needed and the ability to infer from a series of facts that fraudulent claims were submitted. But they've never been addressed by any court as to the merits of LHC's fraud that it committed on behalf of the United States.